# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

DANIEL LAWSON, *on behalf of*
*himself and all others similarly situated,*

      Plaintiff,

v.                             Case No.: 3:18-cv-00083-HNJ

I.C. SYSTEM, INC., a Minnesota
corporation,

      Defendant.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      COMES NOW, Defendant I.C. SYSTEM, INC. ("ICS" and/or "Defendant"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, hereby files this Motion for Summary Judgment, and states the following in support thereof:

      **I.**    **Factual Background / Procedural History.**

          ***a. Plaintiff's allegations against ICS.***

      On January 18, 2018, Plaintiff filed his Class Action Complaint alleging ICS violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), in attempting to collect a Comcast debt from him.[1] *See,* DE 1, *generally*. Plaintiff claims the debt at issue had been discharged as part of a Chapter 7 bankruptcy proceeding, prior to ICS's collection efforts. *Ibid.* at ¶ 8. Plaintiff alleges ICS violated § 1692e by "[d]emanding payment of a debt that is no longer

---

[1] Plaintiff has made no attempt to obtain discovery with respect to the class component of the case nor has he filed a motion for class certification with the Court.

owed, and reporting the debt as delinquent on [Plaintiff's] credit reports, despite his bankruptcy."
*Ibid.* at ¶ 17.[2]

Plaintiff does not allege ICS was provided notice of the bankruptcy proceedings, only that Comcast received such notice. *Ibid.* at ¶ 7. The bankruptcy mailing matrixes attached to the Complaint indicate both the Notice of Bankruptcy and the Order of Discharge were mailed to Comcast. *See,* DE 1-3 and 1-4. Neither matrix indicates the documents were mailed to ICS, and Plaintiff does not allege either document was mailed to ICS. *See,* DE 1, *generally*, and DE 1-3 and 1-4. Absent from the Complaint are any allegations Plaintiff ever advised ICS he filed for bankruptcy or that he sent ICS a written communication requesting ICS cease communicating with him. *See,* DE 1, *generally*.

### b. *Plaintiff's Account.*

On or about April 25, 2017, Comcast placed Plaintiff's Account with ICS for collection. *See,* Declaration of ICS's Vice President of National Account Michael J. Selbitschka ("ICS Dec.")[3] at ¶ 6. Comcast has agreed to refer to ICS only valid, due, and owed debts. *Ibid.* at ¶ 8. Comcast did not indicate to ICS Plaintiff had filed a bankruptcy petition or that the debt at issue was otherwise not owed. *Ibid*.

As part of its compliance practice, ICS utilizes the services of a third-party vendor LEXIS-NEXIS to perform what is commonly referred to as a "bankruptcy scrub." *Ibid.* at ¶ 10. A bankruptcy scrub was performed on Plaintiff's Account on April 25, 2017. *Ibid.* The scrub results provided by LEXIS-NEXIS did not reveal Plaintiff had filed for bankruptcy or that the debt at issue had been discharged as part of a Chapter 7 bankruptcy proceeding. If the scrub results

---

[2] Plaintiff's Complaint also alleged ICS violated § 1692c(c), in Count II, but those allegations were dismissed by the Court without prejudice on August 24, 2018. *See,* DE 27.
[3] A true and accurate copy of the Declaration is attached hereto as Exhibit 1.

provided by LEXIS-NEXIS had revealed Plaintiff filed for bankruptcy or that the debt at issue had been discharged as part of a Chapter 7 bankruptcy proceeding, the account would have automatically been removed from collections. *Ibid.* ICS did not obtain a credit report on Plaintiff as part of its collection efforts. *Ibid.* at ¶ 11.

On April 28, 2017, ICS sent its initial collection letter to the Plaintiff. *Ibid.* at ¶ 12.  The letter contained the "validation notice" 15 U.S.C. §1692g of the FDCPA requires be provided to consumers. *Ibid.* ICS received no written response to its April 28, 2017 letter. *Ibid.*

On July 2, 2017, ICS credit reported the debt to Experian, Innovis, and TransUnion. *Ibid.* at ¶ 13. ICS has an automated system that provides information to credit reporting agencies on accounts selected for credit reporting. *Ibid.* ICS does not receive a credit report from any credit reporting agency as part of ICS's credit reporting process. *Ibid.*

On January 19, 2018, ICS received the Complaint filed in this case. *Ibid.* at ¶ 14. ICS then submitted a request to delete the account from Plaintiff's credit report to Experian, Innovis, and TransUnion and ICS ceased all collection activity. *Ibid.*

## II.    Legal Standard.

A motion for summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

> . . . The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial. The moving party is 'entitled to judgment as a matter of
law' because the nonmoving party has failed to make a sufficient
showing on an essential element of her case with respect to which
she has the burden of proof.

*Id.*, 477 U.S. at 323-24.

### III. Legal Argument.

**Plaintiff's FDCPA claims are meritless as ICS had the right to rely on
Comcast to determine the validity of the debt at issue and ICS had no duty
to perform a pre-collection investigation into the validity of a debt.**

Plaintiff alleges ICS violated § 1692e when it "demand[ed] payment of the debt… and
report[ed] the debt as delinquent on [Plaintiff's] credit reports" as the debt at issue had already
been discharged in bankruptcy in December of 2015. *See,* DE 1 at ¶¶ 8, 17. Plaintiff does not allege
ICS had actual notice of the bankruptcy and tacitly acknowledges ICS had no knowledge of
Plaintiff's bankruptcy proceedings at the time ICS engaged in collection actions with respect to
the debt.

In fact, Plaintiff's Account had been referred to ICS for collection on or about April 25,
2017 and Comcast represented the debt was valid, due and owed without indicating Plaintiff had
filed for a bankruptcy petition or that the debt at issue was otherwise not owed. *See,* ICS Dec. at
¶¶ 6-8. As will be demonstrated below, Plaintiff's FDCPA claims against ICS fail to establish a
genuine issue of material fact as ICS was entitled to rely on the representations made by Comcast
as to the validity of the debt at issue and ICS had no duty to perform a pre-collection investigation
into the validity of the debt.

Federal district and circuit courts have consistently held that debt collectors, in general,
and ICS, in specific, are permitted to rely on information provided by their clients without
incurring liability under the FDCPA. The rationale for these rulings has been consistent: the
FDCPA does not require debt collectors to conduct an independent investigation into the amount

or validity of the underlying debt prior to collections.  *See, e.g. Cornette v I.C. System, Inc.,* Case 16-24454-Civ-COOKE/TORRES, 2017 WL5903557 (Nov. 30, 2017) ("A reading of the FDCPA that requires pre-collection investigation would … render § 1692g(a)(3) superfluous."); *see also, Pratt v. I.C. System, Inc.,* Case 0:05-cv-60678-UU (S.D. Fla May 2006) ("[i]t is well settled that debt collectors are entitled to rely on the information they receive from creditors and are not held strictly liable when they mistakenly attempt to collect amounts in excess of what is due, if they reasonably relied on information provided by their clients.");[4] *McStay v. I.C. Sys. Inc.,* 174 F. Supp. 2d 42 (S.D. N.Y. 2001) ("A debt collector must be able to rely on representations from his client as to the amount of the debt. The FDCPA does not require debt collectors to conduct independent investigations of the information provided by clients when collecting a debt"); *Slanina v. United Recovery Systems. L.P.,* 2011 U.S. Dist. LEXIS 121356 (M.D. Pa. 2011) (Requiring debt collectors to investigate and verify a debt *before* collection would create an additional duty not found in the statute's plain language and would render 1692g(a)(4) superfluous); *Clark v. Capital Credit & Collection  Serv.*, 460 F.3d 1162, 1177 (9th Cir. 2006)  ("[I]f a debt collector reasonably relies on the debt reported by the creditor, the debt collector will not be liable for any errors.); *Jenkins v. Heintz,*  124 F.3d 824, 833-34 (7th Cir. 1997); *Smith v. Transworld  Sys., Inc.,* 953 F.2d  1025, 1032 (6th Cir. 1992); *Solomon v. Baer & Timberlake, P.C.*, 504 F. App'x 702, 705 (10th Cir. 2012) (Defendant could not be held liable for any alleged misrepresentations about the amount of the debt because it reasonably relied upon information from its client, which it is permitted to do.)

This line of thinking is entirely in consistent with § 1692g of the FDCPA, which obligates debt collectors to include language setting forth the consumer's right to dispute the debt. Common sense suggests that implicit in the inclusion of this section in the FDCPA was a recognition that

---

[4] A true and correct copy of the Order Granting defendant's MSJ in *Pratt v. I.C. System, Inc.*, Case 0:05-cv-60678-UU (S.D. Fla May 2006) (J. Ungaro), was attached to ICS's Motion for Judgment on the Pleadings. *See,* DE 9-1.

mistakes can and will be made by creditors in referring debts to debt collectors. Simply stated, the statutory language "demonstrates that, absent a dispute, the debt collector is allowed to assume the debt is valid." *See, Palmer v. I.C. Sys., Inc.*, C-04-03237 RMW, 2005 WL 3001877, at \*5 (N.D. Cal. Nov. 8, 2005). It is therefore incumbent on a debtor to notify the debt collector of a dispute, in order to create an obligation on the part of the debt collector to either verify the debt or cease collection activities.

In ruling on the same argument set forth in ICS's Motion for Judgment on the Pleadings in this case, the Court stated:

> "[n]owhere in the FDCPA does the statute specifically require a debt collector to validate a debt prior to seeking collection of such debt." *Cornette v. I.C. Sys., Inc.*, 280 F. Supp. 3d 1362, 1369-70 (S.D. Fla. 2017). In fact, many courts "have found that debt collectors are entitled to rely on the information they receive from the creditor. They are not held strictly liable when they mistakenly attempt to collect amounts in excess of what is due, if they reasonably relied on information provided by their clients." *Id.* (collecting cases) (internal quotation marks omitted).
>
> It is undisputed at this juncture that ICS demanded payment of a debt that Lawson no longer owed. See docs. 1, 9. At issue here is ICS' contention that it is not liable because it is entitled to rely on information it received from Comcast. This may well prove to be the case ultimately. At this juncture, however, there is no evidence before the court that Comcast provided any information to ICS, or what that information entailed. Therefore, it is premature to decide, as a matter of law, that ICS reasonably relied on information provided by a creditor.

*See,* DE 27, pp. 4 – 5.

As detailed above, it is no longer "premature" to determine whether ICS reasonably relied on information provided by Comcast. Comcast did not indicate Plaintiff had filed a bankruptcy petition or that the debt at issue was otherwise not valid. *See,* ICS Dec. at ¶¶ 6-8. As such, ICS was

legally entitled to rely, and in fact did rely, on the representations from Comcast as to the validity of the debt at issue.

Moreover, upon Comcast's referral of Plaintiff's Account, ICS utilized the services of a third-party vendor LEXIS-NEXIS to perform and complete what is commonly referred to as a "bankruptcy scrub" on April 25, 2017. *Ibid.* at ¶ 10.[5] The bankruptcy scrub results did not reveal Plaintiff had filed for bankruptcy or that the debt at issue had been discharged as part of a bankruptcy proceeding. *Ibid.* If the scrub results provided by LEXIS-NEXIS had revealed Plaintiff filed for bankruptcy or that the debt at issue had been discharged as part of a bankruptcy proceeding, Plaintiff's Account would have automatically been removed from collections. *Ibid.*

To be clear, ICS would be entitled to rely on Comcast even if ICS had <u>not</u> performed the bankruptcy scrub. To rule a debt collector cannot reasonably rely on its clients to refer only valid debt if the debt collector takes additional steps--such as performing a bankruptcy scrub--to determine the validity of the debt would create a disincentive for collection agencies to take those additional steps. The additional steps are designed not only to protect the debt collection agency from liability exposure, but to ensure consumers are not receiving calls on debts that are not legitimately owed.

Additionally, ICS sent its initial collection letter to the Plaintiff, which included the "validation notice" required by the FDCPA. *Ibid.* at ¶ 12. ICS never received a response from Plaintiff disputing or requesting validation of Plaintiff's Account prior to credit reporting the debt. *Ibid.* at ¶ 12.

After ICS received the Comcast debt and the scrub results from LEXIS-NEXIS did not reveal a bankruptcy discharge and after ICS did not receive a response from Plaintiff after receipt

---

[5] ICS's procedures are documented as having occurred not only by ICS's Dec., but also such procedures are documented in its Account Notes (Exhibit "1" to ICS Dec.) as having been performed.

of its "validation notice," ICS credit reported the debt to Experian, Innovis, and TransUnion on July 2, 2017. *Ibid.* at ¶ 13. On January 19, 2018, ICS received the Complaint filed in this case, for the first time disputing the debt to ICS, after which ICS submitted a request to delete the account from Plaintiff's credit report to Experian, Innovis, and TransUnion and ICS ceased all collection activity. *Ibid.* at ¶ 14.

In *Cornette,* the plaintiff alleged ICS was collecting an amount that was not owed, i.e. a collection fee. ICS argued "if the charge does violate the FDCPA, [it] is still not liable under the FDCPA because it had a right to rely on [the creditor's] representations of Plaintiff's debt." *Cornette*, 2017 WL 5903557. District Court Judge Marcia Cooke agreed stating:

> Nowhere in the FDCPA does the statute specifically require a debt collector to validate a debt prior to seeking collection of such debt. In fact, § 1692g(a)(3) specifically allows a debt collector to assume a debt to be valid if not disputed by the consumer within thirty days of receiving such notice. A reading of the FDCPA that requires pre-collection investigation would therefore render § 1692g(a)(3) superfluous, especially as applied to the first communication between a debt collector and consumer.

*Id.*

The Court also rejected the plaintiff's argument ICS was required to prove the "bona fide error" defense under the FDCPA in order to be entitled to judgment, finding the "reliance argument" to be "distinct" from the bona fide error defense. *Id.*, 2017 WL 5903557, at *6.

*Pratt* is materially indistinct from the instant case and compels the same result. In that case, the plaintiff argued ICS violated the FDCPA's prohibition on the collection of "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt." *Id.,* 0:05-cv-60678-UU at p. 10. ICS argued that even if the amounts it attempted to collect, including "additional client charges" and 10% interest, were not authorized by the plaintiff's agreement with the original

creditor, ICS had a right to rely on the creditor's representation that these amounts were due. The Court agreed, stating:

> …even if Plaintiff is correct that his agreement with AHHC did not provide for the additional ten dollar charge or the 10% interest, Defendant is not liable under § 1692f(1) or § 1692e(2) because there are no material facts in dispute that one AHHC informed Defendant these charges were due from Plaintiff, and two, that Defendant reasonably relied on these representations.

*Id.*

Likewise in *McStay*, ICS faced similar allegations and was granted a dismissal. The plaintiff in *McStay* alleged ICS violated § l692e(2) when its letter "attempted to charge an annual interest rate of 12% in each of its letters, in excess of the 9% rate mandated by" statute. *Id.,* 174 F. Supp. 2d 42. The Court dismissed the case, stating: "A debt collector must be able to rely on representations from his client as to the amount of the debt. The FDCPA does not require debt collectors to conduct independent investigations of the information provided by clients when collecting a debt." *Id.* ICS made no independent determination of the amount owed nor was it required to under the FDCPA.

In *Ducrest v. Alco Collections,* plaintiff alleged the debt collector violated 1692f(l) "by sending a demand letter to plaintiff which demanded payment of charges which were not expressly agreed upon between the parties." *Id.,* 931 F. Supp. 459, 460 (D. La. 1996). The court dismissed the case, stating:

> …plaintiff would have to show that defendant was knowingly attempting to collect a charge not authorized by the lease and not permitted by law. A debt collector should be able to rely on the representation and implied warranty from its client that the amount was due under either the lease or the law. The FDCPA does not require an independent investigation of the information provided by clients when a debt collector tries to collect a debt, nor does it require the debt collector to dispute the creditor's construction of a contract.

*Id.* at 462.

In *Hubbard v. National Bond & Collection Assoc.*, 126 B.R. 422, 426 (D. Del. 1991), aff'd, 947 F.2d 935 (3d. Cir. 1991), the plaintiff debtor sued the defendant collector for its efforts to collect a debt that was part of an estate put into bankruptcy prior to the collection efforts. The contact with the plaintiff consisted of a single letter, followed by direct telephone communication with the plaintiff. All collection activity ceased following the telephone conversation. The Bankruptcy Court reasoned that it was against public policy to require a debt collector to fully investigate a debtor's background before proceeding to collect a debt:

> The statutory scheme of the FDCPA thus allows debt collectors to avoid the costs of investigating a debtor's background and ensures a cost effective means by which a debtor and debt collector can exchange information. This is an important part of the FDCPA's statutory scheme. The plaintiff's contention that debt collectors must bear the entire burden of collecting information concerning debtors ignores the importance of § 1692g and the Congressional intent behind its enactment.
> …
>
> In the present case §1692g functioned as it was intended. Unaware that [plaintiff] had filed for bankruptcy, National Bond tried to collect a $957.15 debt from her. The collection notice contained the required written statement that Ms. Hubbard had a right to contest the debt. Ms. Hubbard promptly contacted National Bond, contested the debt, and notified it that she had filed for bankruptcy. At this point all debt collection efforts by the defendant ceased. The statutory scheme worked.

*Id.*

The FDCPA creates a specific right in favor of a debt collector to assume the debt is valid ***unless the debtor disputes it within 30 days of receiving the § 1692g notice***. So, until the point at which the debt collector receives such a dispute, it has the right to assume the debt is valid, i.e. it is entitled to rely on its creditor client to determine the validity of the debt.

**IV.     Conclusion.**

As ICS had the right to rely on Comcast to determine the validity of the debt at issue and ICS had no duty to perform a pre-collection investigation into the validity of a debt, ICS is entitled to summary judgment as a matter of law and dismissal of this case with prejudice.

WHEREFORE, Defendants respectfully requests an Order from this Honorable Court GRANTING Defendant's Motion for Summary Judgment pursuant to Rule 56 and dismissing this case with prejudice.

Dated: January 31, 2019

Respectfully submitted by:

 /s/ Dale T. Golden
DALE T. GOLDEN, ESQ.
Florida Bar No.: 0094080
**GOLDEN SCAZ GAGAIN, PLLC**
201 North Armenia Avenue
Tampa, Florida 33609-2303
Phone: (813) 251-5500
Fax: (813) 251-3675
dgolden@gsgfirm.com
*Admitted Pro Hac Vice*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 31, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF.  I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

 /s/ Dale T. Golden
DALE T. GOLDEN, ESQ.
Florida Bar No.: 0094080