FILED
2019 Jun-17  PM 05:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **DANIEL LAWSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **3:18-cv-00083-AKK** |
| **I.C. SYSTEM, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Daniel Lawson brings this action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., against I.C. System ("ICS") for making false representations in connection with the collection of a debt. *See* doc. 1. At issue here is ICS's attempts to collect a debt Lawson successfully discharged in bankruptcy. The parties have filed cross-motions for summary judgment, docs. 33 and 35, which are fully briefed and ripe for consideration, docs. 37 and 40. After reading the briefs, reviewing the evidence, and considering the relevant law, the court finds that ICS has established that it is entitled to the bona fide error defense and, as such, is entitled to summary judgment, and Lawson's motion is due to be denied.

1

## I.     LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). At summary judgment, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255. Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that

the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial."  *Id.* at 324 (internal quotations omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The simple fact that both sides have filed a motion for summary judgment does not alter the ordinary standard of review. *See Chambers & Co. v. Equitable Life Assurance Soc.*, 224 F.2d 338, 345 (5th Cir. 1955) (explaining that cross-motions for summary judgment "[do] not warrant the granting of either motion if the record reflects a genuine issue of fact"). Rather, the court will consider each motion separately "'as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.'" *3D Med. Imaging Sys., LLC v. Visage Imaging, Inc.*, 228 F. Supp. 3d 1331, 1336 (N.D. Ga. 2017) (quoting *Shaw Constructors v. ICF Kaiser Eng'rs*, Inc., 395 F.3d 533, 538-39 (5th Cir. 2004)). "[C]ross motions for summary judgment will not, in themselves, warrant the court in granting summary judgment

unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *Bricklayers, Masons & Plasterers Int'l Union v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975).[1]

## II.    FACTUAL BACKGROUND

This case arises out of a dispute over a debt collector's attempts to collect a debt that was no longer owed. While living on Smith Street in Florence, Alabama, Lawson incurred a debt to Comcast. Doc. 35-1 ¶ 3. Lawson subsequently filed a petition for Chapter 13 bankruptcy, which he then converted to Chapter 7. *See* doc. 35-1 ¶ 3; *In re: Lawson*, No. 14-82442-CRJ7 (Bankr. N.D. Ala. Dec. 23, 2015), ECF Nos. 1, 31. The amended Schedule F listed the Comcast debt, and the bankruptcy court sent notice of Lawson's petition to Comcast. *See* docs. 1-2; 1-3. Ultimately, the court discharged Lawson's debts, and sent the requisite notice to Comcast and the various credit agencies. *See* docs. 1-4; 1-5.

Over a year after the discharge, Comcast placed Lawson's account balance of $388.00 with ICS, via a file transfer, for collection. Docs. 33-1 at 1-2, 4, 16; 35-2 at 5; 47-2 at 1. Comcast provided a Waynesboro, Tennessee address for Lawson,

---

[1] Under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), decisions of the former Fifth Circuit rendered prior to October 1, 1981 are binding on courts in the Eleventh Circuit.

doc. 47-2 at 2; *see* docs. 47-1 at 2; 33-1 at 8,[2] and also did not notify ICS that the bankruptcy court had discharged Lawson's debt, doc. 33-1 ¶ 8. On the same date it received the account, ICS relayed Lawson's information to Lexis-Nexis to perform a "bankruptcy scrub," which involved a search of Lexis-Nexis' "bankruptcy and deceased database to identify any matching records." Doc. 35-2 at 8. The search did not reveal Lawson's bankruptcy petition or discharge. Doc. 33-1 ¶ 10. Thereafter, ICS sent an initial collection letter to Lawson at the Tennessee address,

---

[2] In a declaration submitted by ICS after the discovery and dispositive motions deadline, Rebecca Deal, Comcast's Director of Credit and Account Services, testified that Comcast identified Lawson's address as the Tennessee address when it "placed" Lawson's account with ICS. *See* doc. 47-2 at 2. However, in a brief styled, "Plaintiff's Response to Defendant's Supplemental Evidence," doc. 48, Lawson requests that the court strike Deal's declaration because ICS never disclosed Deal during discovery, purportedly depriving Lawson of the opportunity to depose her. *See* docs. 47-1 and 47-2. The court construes Lawson's "response," doc. 48, as a motion to strike. Federal Rule of Civil Procedure 37(c)(1) provides that, "if a party fails to provide information or identify a witness as required under Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). Because the court previously granted Lawson's motion for leave to file supplementary exhibits after the discovery and dispositive motions deadlines, and also gave ICS an opportunity to respond to Lawson's exhibits, *see* doc. 44, the court finds that ICS's late disclosure is substantially justified. *See id.*; *Lincoln Rock, LLC v. City of Tampa*, No. 8:15-CV-1374-T-30JSS, 2016 WL 6138653, at *3 (M.D. Fla. Oct. 21, 2016) ("The court has broad discretion in deciding whether a failure to disclose evidence is substantially justified or harmless under Rule 37(c)(1)."). Accordingly, Lawson's request to strike Deal's declaration fails.

Moreover, even if it struck Deal's declaration, Lawson would have still failed to raise a genuine issue of material fact as to whether Comcast identified Lawson's address as the Tennessee address when it referred Lawson's account to ICS. Although Lawson contends that the subpoena response from Comcast proves otherwise, Comcast's response merely indicates that Lawson never received Comcast service at the Tennessee address and does not state that Lawson never lived at that address. *See* doc. 41-5 at 1 ("Comcast has no information for Daniel L. Lawson with service at . . . [the Tennessee address]"). Significantly, ICS's "account history" for Lawson's account lists the Tennessee address as "Last Client Address" and indicates that the "source" of the address was Comcast. *See* doc. 33-1 at 8, 4; 47-1 at 1-2. In other words, ICS has presented evidence independent of Deal to show that it had a valid basis for believing that Lawson lived at the Tennessee address.

which contained the written notice required by 15 U.S.C. § 1692g(a).[3] Doc. 33-1 ¶ 12. Lawson never received this letter because he had not resided at that address "since at least 2013." Doc. 35-1 ¶¶ 3-4. ICS sent a second letter to Lawson at the Tennessee address, and then sent two more letters to Lawson in Florence, Alabama. Doc. 35-2 at 6. Concurrent with the letters, ICS reported the purported debt to the various credit agencies. Docs. 33-1 ¶ 13; 35-2 at 6; 1-5 at 1. Lawson never responded to ICS's letters or otherwise disputed the purported debt, and filed the present action instead. *See* doc. 33-1 ¶¶ 12,14.

## III.   ANALYSIS

### A. <u>Whether ICS Made False Representations in Connection with the Collection of a Debt</u>

The FDCPA aims, in part, to "eliminate abusive debt collection practices by debt collectors[.]" 15 U.S.C. § 1692(e). Towards this end, the Act prohibits a debt

---

[3] 15 U.S.C. § 1692g(a) requires a debt collector to "send the consumer a written notice," either in its initial communication or "within five days" thereafter, containing:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

collector from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, including "the false representation of the character, amount or legal status of any debt," *id.* § 1692e(2)(A). Furthermore, "the FDCPA typically subjects debt collectors to liability even when violations are not knowing or intentional." *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1271 (11th Cir. 2011). "Nevertheless, a debt collector's knowledge and intent can be relevant—for example, a debt collector can avoid liability if it 'shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.'" *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1259 n.4 (11th Cir. 2014) (quoting 15 U.S.C § 1692k(c)).[4]

Turning to the specifics here, Lawson's § 1692e claim is based on the third letter ICS sent,[5] and the decision to report the debt as delinquent to credit agencies.

---

[4] The court addresses ICS's bona fide error defense in section III-C, *infra*.

[5] The body of the letter states in its entirety:
"Daniel Lawson:
Your offer to settle the balance of $388.00 owed to Comcast for the reduced amount of $252.20 has been accepted. Please promptly send your payment to take advantage of this reduced settlement agreement.
Upon receipt of your $252.20, our office will update your account balance as settled in full. In the event that this account information has been forwarded to the national credit reporting bureaus, those files will also be updated appropriately. You have the right to inspect your credit file in accordance with federal law.
If payment is not received according to this settlement agreement, our office will resume collection of the entire balance of $388.00.

Docs. 1 at 4; 35 at 9. In analyzing the claims related to the letter, the court must "employ the 'least sophisticated consumer' standard." *LeBlanc,* 601 F.3d at 1193 (citations omitted). "The least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Id.* at 1194. This standard is an objective test that "protect[s] naive consumers, . . . [but] also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness." *Id.* Viewed under the "least sophisticated consumer" standard, the court agrees with Lawson that the letter makes false representations in connection with the collection of a debt by demanding payment for a debt Lawson discharged in bankruptcy. *See Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 495 (7th Cir. 2007) ("Dunning people for their discharged debts . . . is prohibited by the [FDCPA], which so far as relates to this case prohibits a debt collector . . . from making a false representation of the character, amount, or legal status of any debt." (citations and quotations omitted)); *Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004) ("A demand for immediate payment while a debtor is in bankruptcy (or after the debt's discharge) is 'false' in the sense that it asserts that money is due, although, because of the automatic stay (11 U.S.C. § 362) or the discharge

---

We are a debt collector attempting to collect a debt and any information obtained will be used for that purpose. This does not contain a complete list of the rights consumers have under Federal, State, or Local laws." Doc. 1-6 at 1.

injunction (11 U.S.C. § 524), it is not."); *Bacelli v. MFP, Inc.*, 729 F. Supp. 2d 1328, 1332 (M.D. Fla. 2010) (quoting *Randolph*, 368 F.3d at 728)).

Likewise, reporting Lawson's purported debt to the credit agencies, which ICS admits it did, *see* docs. 33-1 ¶ 13; 1-5, also constitutes "false . . . representation[s] . . . in connection with the collection of [a] debt." 15 U.S.C. § 1692e. Moreover, "§ 1692e is . . . read to bar 'any' prohibited representation, regardless of to whom it is directed, *so long as* it is made 'in connection with the collection of any debt.'" *Miljkovic, v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1301 (11th Cir. 2015) (citation omitted) (emphasis in original). Thus, although the credit reports were directed to the credit agencies instead of Lawson, they constitute "false . . . representation[s]" to the credit agencies because they "erroneously state the amount of the debt owed" by Lawson and "incorrectly identify the holder of the alleged debt." *See Miljkovic*, 791 F.3d at 1306. Furthermore, the testimony of ICS's Vice President Michael J. Selbitschka that ICS reported the debt as delinquent due to its "statement of work" with Comcast, *see* doc. 35-2 at 7, establishes that ICS reported the debt "in connection with the collection of" Lawson's purported debt. *See Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1302 (11th Cir. 2014) (noting that "if a communication conveys information about a debt and its aim is at least in part to induce the debtor to pay, it falls within the

scope of the Act." (citing *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 116 (2d Cir. 1998))).

These findings establish that ICS made "false . . . representation[s] . . . in connection with the collection of a debt." *See* 15 U.S.C. § 1692e. ICS resists these findings by arguing that, based on *Montgomery v. Florida First Financial Group*, No. 6:06-CV-1639-ORL-31KRS, 2008 WL 3540374, at *5-6 (M.D. Fla. 2008), finding a violation of § 1692e would "render the specific provisions in § 1692e(8) meaningless." Doc. 37 at 13.[6] But the court in *Montgomery* held only that a debt collector's threats to arrest the plaintiff violated § 1692e(4), rather than § 1692d, noting that, "because § 1692e(4) specifically addresses misrepresentations regarding arrest for nonpayment of a debt, to construe the same act as violative of the general provisions of § 1692d would render it superfluous." *Id.* at *6. Neither provision of the FDCPA is at issue here. Moreover, the language and structure of § 1692e indicate ICS's credit reporting activity can violate the general provision of § 1692e, notwithstanding subsection (8)'s focus on communications regarding credit

---

[6] The relevant provisions of 15 U.S.C. § 1692e state:

> "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . .
>
> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

15 U.S.C. § 1692e(8).

information. *See Milijkovic*, 791 F.3d at 1301 ("Section 1692e broadly prohibits '*any* false, deceptive, or misleading representation or means *in connection with the collection of any debt*[,]" and proceeds to "list[] examples of conduct that would violate § 1692e." (emphasis in original)). And, "[t]he plain text of § 1692e . . . makes clear that the examples of violations under that section are not meant to 'limit[] the general application'" of the broad prohibition contained in its first sentence. *McCamey v. Capital Mgm't, Servcs., LP*, No. 5:17-cv-1429-UJH-VEH, 2018 WL 3819828, at *1 n.1 (N.D. Ala. Aug. 10, 2018) (quoting § 1692e). Thus, while subsection (8) provides an example of conduct related to credit information that violates § 1692e, it does not preclude the general application of the first sentence of § 1692e to a debt collector's misrepresentations in reporting a debt. *See id*.

## B. <u>Whether ICS's Reliance on Comcast's Representations Bars Its Liability.</u>

The court turns next to ICS's contentions that it did not violate § 1692e because: (1) it "had the right to rely on Comcast to determine the validity of the debt at issue," and (2) it was entitled to assume the validity of the debt when Lawson failed to dispute it within thirty days of receiving the notice required by § 1692g(a). Doc. 33 at 4.  The court addresses these contentions in turn.

### 1. Whether ICS had the right to rely on Comcast.

The parties dispute whether ICS's "reliance" defense is a valid defense to liability, independent of the bona fide error defense. ICS notes correctly that several federal appellate courts have recognized that, "if a debt collector reasonably relies on the debt reported by the creditor, the debt collector will not be liable for any errors." *Clark v. Capital Credit & Collections*, 460 F.3d 1162, 1177 (9th Cir. 2006).[7] However, these cases did not hold that debt collectors were entitled, as a rule, to rely on their client's representations; rather, the courts considered whether, under the bona fide error defense, the debt collector's reliance was a "procedure[] reasonably adapted to avoid" the bona fide errors that caused its FDCPA violations. *See* 15 U.S.C. § 1692k(c); *Clark*, 460 F.3d at 1177 ("[T]he bona fide error defense will not shield a debt collector whose reliance on the creditor's representation is unreasonable . . ."); *Reichert v. Nat'l Credit Systems, Inc.*, 531 F.3d 1002, 1007 (9th Cir. 2008) ("When we spoke in *Clark* of the nonliability of a debt collector who 'reasonably relies on the purported debt,' we were referring to a reliance on the basis of procedures maintained to avoid mistakes."). These cases are consistent with the approach in this Circuit to consider

---

[7] *See also Hyman v. Tate*, 362 F.3d 965, 967-68 (7th Cir. 2004) (finding debt collector satisfied bona fide error defense where it reasonably relied on its creditor and immediately ceased collection efforts once it learned of a bankruptcy filing); *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992) (finding debt collector satisfied bona fide error defense by reasonably relying on creditor's representation in its referral form to only refer debts "legally due and owing").

this issue in conjunction with the bona fide error defense, and in holding that a debt collector need not "independently investigate and verify the validity of a debt <u>to qualify for the bona fide error defense</u>." *See Owen*, 629 F.3d at 1276 (emphasis added) (citing *Hyman*, 362 F.3d at 968; *Smith*, 953 F.2d at 1032; *Jenkins v. Heintz*, 124 F.3d 824, 834-35 (7th Cir. 1997))).

The court is also not persuaded by ICS's contention that it need not raise the bona fide error defense to argue reliance,[8] and that its reliance on Comcast indicates that it lacked "prior knowledge" of Lawson's bankruptcy proceedings.[9] This contention is at odds with the holdings of several circuits that § 1692e imposes strict liability.[10] While the Eleventh Circuit has not issued a similar ruling,

---

[8] *See* doc. 37 at 7-8 (citing *Cornette v. I.C. System, Inc.*, 280 F. Supp. 3d 1362, 1370 (S.D. Fla. 2017) (finding debt collector was entitled to rely on its clients' representations); *Pratt v. I.C. System, Inc.*, 2006 WL 8432175, at *5 (S.D. Fla. May 10, 2006) (same); *McStay v. I.C. System, Inc.*, 174 F. Supp. 2d 42, 47 (S.D.N.Y. 2001) (same)).

[9] *See* doc. 37 at 8-9 (quoting *Hubbard v. Nat'l Bond & Collection Assocs.*, 126 B.R. 422, 228-29 (D. Del. 1991), *aff'd without opinion* 947 F.2d 935 (3d Cir. 1991)). Like *Hubbard*, the published district court cases that ICS cites also either held that § 1692e requires a "knowing" violation or otherwise rejected the idea that § 1692e imposes strict liability. *See* 126 B.R. 422, 228-29 (D. Del. 1991), *aff'd without opinion* 947 F.2d 935 (3d Cir. 1991); *Cornette v. I.C. Sys., Inc.*, 280 F. Supp. 3d 1362, 1371 (S.D. Fla. 2017) (rejecting interpretation that FDCPA imposes strict liability); *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1140–41 (N.D. Ill. 1998) (finding plaintiff must establish a knowing violation under § 1692e); *McStay v. I.C. Sys., Inc.*, 174 F. Supp. 2d 42, 47 (S.D.N.Y. 2001), *aff'd*, 308 F.3d 188 (2d Cir. 2002) (interpreting § 1692e(2)(A) as imposing a knowledge requirement); *Ducrest v. Alco Collections, Inc.*, 931 F. Supp. 459, 462 (M.D. La. 1996)) (requiring a knowing misrepresentation to violate § 1692e)). Because the court concludes that § 1692e imposes strict liability, it does not find these cases persuasive.

[10] *See Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 448–49 (6th Cir. 2014), *as amended* (Dec. 11, 2014) (finding that plaintiff stated a claim under § 1692e and noting "[t]he FDCPA is a strict-liability statute: A plaintiff does not need to prove knowledge or intent"); *Clark*, 460 F.3d at 1176 ("Requiring a violation of § 1692e to be knowing or intentional

it has noted that the FDCPA is "generally described as a 'strict liability' statute," although it "affords a narrow carve-out to the general rule of strict liability, known as the 'bona fide error' defense." *Crawford*, 758 F.3d at 1259; *Owen*, 629 F.3d at 1271. Indeed, as the Ninth Circuit has held, "that Congress took care to require an element of knowledge or intent in certain portions of the FDCPA where it deemed such a requirement necessary," but omitted any such language from § 1692e, indicates that § 1692e lacks a scienter requirement. *Clark*, 460 F.3d at 1176 (quoting *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1362 (S.D. Fla. 2000)); *compare* 15 U.S.C. § 1692e *with* 15 U.S.C. § 1692d(5)("Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously *with intent to* annoy, abuse, or harass any person at the called number.") (emphasis added) *and* 15 U.S.C. § 1692f(3) ("The solicitation of a debt collector of any postdated check . . . *for the purpose of* threatening or instituting criminal prosecution.").

### 2. Whether ICS was entitled to assume the validity of the debt when Lawson failed to dispute it within thirty days.

ICS also contends that, pursuant to 15 U.S.C. § 1692g, it was entitled to assume the validity of Lawson's purported debt, which Lawson failed to dispute

---

needlessly renders superfluous § 1692k(c)."); *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) ("Although [the debt collector] was unaware of the [debtor's] bankruptcy, under § 1692e ignorance is no excuse.").

within thirty days. Doc. 33 at 5-6, 10.[11] This contention is belied by the strict liability nature of § 1692e, which means that assumptions about the validity of a debt do not preclude a finding that the debt collector violated § 1692e. This is consistent with the decisions other courts that have considered the relationship between § 1692g and § 1692e have reached. For example, in *Russell v. Absolute Collection Services, Inc.*, a debt collector argued that liability imputed under § 1692e only if "the debtor disputes the debt in accordance with the validation procedures" under § 1692g. 763 F.3d 385, 392 (4th Cir. 2014). The debt collector contended that "the permission afforded by § 1692g to 'assume[]' the validity of an undisputed debt must necessarily authorize a debt collector to continue seeking collection of such a debt," absent the debtor's dispute within thirty days of receiving the written notice from the debt collector. *Id.* The Fourth Circuit rejected this contention, noting:

> Under [the debt collector's] construction of the statute, a debt collector would have free rein to make false or deceptive representations about the status of a debt if the debtor failed to dispute its validity within thirty days of receiving the initial collection letter.

---

[11] 15 U.S.C. § 1692g(a)(3) allows debt collectors "to assume a debt to be valid if not disputed by the consumer within thirty days of receiving" the requisite written notice. *Cornette v. I.C. System, Inc.*, 280 F. Supp. 3d 1362, 1370 (S.D. Fla. 2017); *see Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996). While Lawson claims that he never received the initial letter containing the notice, docs. 33-1 ¶ 12; 35-1 ¶¶ 3-4, because the plain language of § 1692g(a) "requires only that [ICS] have '*sen[t]* [Lawson] a written notice,' not that [Lawson] have received one," it is clear that ICS discharged its obligations under 15 U.S.C. § 1692g. *See Grimsley v. Palm Beach Credit Adjusters, Inc.*, 691 F. App'x 576, 579 (11th Cir. 2017) (quoting 15 U.S.C. § 1692g(a) and citing *Mahon v. Credit Bureau of Placer Cty. Inc.*, 171 F.3d 1197, 1201 (9th Cir. 1999) ("We hold that § 1692g(a) requires only that a notice be 'sent' by a debt collector.")).

> Shielding debt collectors from liability for their falsehoods would thwart the statute's objective of curtailing abusive and deceptive collection practices and would contravene the FDCPA's express command that debt collectors be liable for violations of "any provision" of the statute. . . . Indeed, the FDCPA's legislative history suggests that the purpose of the validation notice requirement was to "eliminate the recurring problem of debt collectors dunning the wrong person or *attempting to collect debts which the consumer has already paid.*"

*Id*. at 393-94 (quoting 15 U.S.C. § 1692k and S.Rep. No. 382, 95th Cong. at 4 (1977) (emphasis in original)). Other circuit courts have similarly concluded that plaintiffs need not dispute the validity of a debt pursuant to § 1692g in order to state a claim under § 1692e.[12] Although these cases concerned the separate issue of whether debtors are required to dispute a purported debt prior to filing a FDCPA suit, they indicate that "immunizing false statements that a consumer failed to promptly dispute . . . would be inconsistent with the FDCPA's goal of ensuring debt collectors act responsibly." *McLaughlin*, 756 F.3d at 248.   Therefore, the court finds § 1692g does not immunize ICS from liability.

### C. Whether ICS Can Satisfy the Bona Fide Error Defense.

Alternatively, ICS argues that it is entitled to the bona fide error defense afforded to it by § 1692k(c). Lawson contends, as an initial matter, that the defense

---

[12] *See Vangorden v. Second Round, Ltd. P'ship*, 897 F.3d 433, 440 (2d Cir. 2018) ("[T]o conclude that the debtor forfeits his or her ability to bring a lawsuit . . . simply because the debtor failed to invoke § 1692g's discretionary validation procedures . . . would have the perverse effect of 'immunizing' a debt collector's false statements after 30 days if a consumer does not dispute the debt within that time frame."); *Evans v. Portfolio Recovery Assocs., LLC,* 889 F.3d 337, 347-48 (7th Cir. 2018); *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 248 (3d Cir. 2014).

is unavailable because ICS raised it for the first time in its combined response/reply brief, and waived it by "disclaiming" it in its initial brief in support of its motion for summary judgment. Doc. 40 at 7-8. "While '[m]any district courts in the Eleventh Circuit reject new arguments raised in reply briefs,' this rule is designed to prevent any prejudice that might result when a party is deprived of the opportunity to respond to new arguments." *Mt. Hebron Dist. Missionary Baptist Ass'n of AL, Inc. v. Sentinel Ins. Co.*, No. 3:16-CV-658-ECM-GMB, 2018 WL 6822621, at *1 (M.D. Ala. Oct. 24, 2018) (quoting *Pattee v. Ga. Ports Auth.*, 477 F. Supp. 2d 1272, 1274 (S.D. Ga. 2007)). Here, however, Lawson was not "deprived of the opportunity to respond." In fact, Lawson raised the defense first when he argued that ICS could not satisfy it in his combined initial/response brief, and then responded to the defense in his own reply brief when ICS raised the defense. *See* doc. 35 at 13-17. Furthermore, the court rejects Lawson's contention that ICS "disclaimed" the defense by contending in its initial brief that its reliance defense was sufficient to preclude liability, or by objecting to Lawson's interrogatories. *See* docs. 8 at 6; 33 at 7; 40 at 8; 40-1 at 3.

As for the defense itself, to establish it, ICS "must show by a preponderance of the evidence that its violation of the Act: (1) was not intentional; (2) was a bona fide error; and (3) occurred despite the maintenance of procedures reasonably adapted to avoid any such error." *Edwards v. Niagara Credit Solutions, Inc.*, 584

17

F.3d 1350, 1352 (11th Cir. 2009) (citation omitted); *see* 15 U.S.C. § 1692k(c).[13]

"The first prong requires a showing that 'the violation was unintentional, not that the underlying act was unintentional,' such that [ICS] must 'establish the lack of specific intent to violate the Act.'" *Arnold v. Bayview Loan Servicing, LLC*, 659 F. App'x 568, 571 (11th Cir. 2016) (quoting *Johnson v. Riddle*, 443 F.3d 723, 727-28 (10th Cir. 2006)). The second prong requires a showing that "the error resulting in a violation" was "objectively reasonable" and that it was "made in good faith; a genuine mistake, as opposed to a contrived mistake." *Edwards*, 584 F.3d at 1352 (citation omitted). Finally, the third prong involves a two-step inquiry: (a) "whether the debt collector 'maintained'—*i.e.*, actually employed or implemented—procedures to avoid errors" and (b) "whether the procedures were 'reasonably adapted' to avoid the specific error at issue." *Owen*, 629 F.3d at 1273-74. This is a "fact-intensive inquiry" that "proceed[s] on a case-by-case basis and depend[s] upon the particular facts and circumstances of each case." *Id*. at 1274.

The first prong of the inquiry is satisfied, as it is undisputed that ICS did not intend to make "false . . . representations" in violation of § 1692e and that it lacked actual notice of the discharge of the debt in bankruptcy. *See* doc. 33-1 ¶¶ 8, 11. To

---

[13]   15 U.S.C. § 1692k(c) states: "A debt collector may not be held liable [under the FDCPA] . . . if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

satisfy the second and third prongs of the defense,[14] ICS relies primarily on the testimony of Selbitschka and its Chief Information Officer Thomas E. Emms. Selbitschka's testimony, as outlined in his declaration and deposition, establishes that: (1) when Comcast placed Lawson's account with ICS for collection, it identified Lawson's address as his former Tennessee address; (2) ICS performed a "bankruptcy scrub" of Lawson's account using Lexis-Nexis' services prior to sending its initial collection letter; (3) the "scrub results" did not reveal Lawson's bankruptcy filing or discharge; and, (4) if the results provided by Lexis-Nexis had revealed the bankruptcy petition or the discharge, ICS's collections software would have automatically "removed [the account] from collections." Docs. 33-1 at 1-2; 35-2; 47-1.[15]

---

[14] *See Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006) ("the bona fide prong and the procedures prong will often merge").

[15] Lawson contends that Selbitschka's deposition demonstrated that he understood very little about Lexis-Nexis' services, indicating that ICS cannot satisfy the bona fide error defense. Doc. 35 at 9. ICS responds that Selbitschka's deposition, unlike his declaration, is not "binding on ICS" because Selbitschka was deposed in his individual capacity pursuant to Federal Rule of Civil Procedure 30(b)(1), rather than Rule 30(b)(6). Doc. 37 at 2-7. Lawson's only reply to ICS's contention is that ICS's counsel informed Lawson's counsel via email that they could ask Selbitschka about the bankruptcy scrub service in his deposition. Doc. 40 at 8 n.4 (citing doc. 40-2).

   Rule 30(b)(6) requires the discovering party to provide a notice or subpoena naming an organization "as a deponent" and "describ[ing] with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). In turn, the organization "has an affirmative duty to provide a witness who is able to provide binding answers on behalf of the corporation." *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012). Here, although Lawson's deposition notice mentions Rule 30(b)(6) along with Rule 30(b)(1), the notice is deficient because it does not describe any "matters on which examination is requested" and because it names Selbitschka as the deponent rather than ICS. *See* Fed. R. Civ. P. 30(b)(6); doc. 37-1 *Operative Plasterers' & Cement Masons' Int'l Ass'n of U.S. and Canada AFL-CIO v. Benjamin*,

Lawson challenges the bona fide error defense by arguing, first, that ICS's procedures were unreasonable because the account data submitted to Lexis-Nexis contained Lawson's outdated Tennessee address, and likely caused the erroneous results. Doc. 35 at 16; 40 at 10. Lawson, however, has presented no support for this contention. Instead, based on this record, the contention is based on speculation or entails that the court accepts Lawson's assumption that search databases are static and do not track subsequent moves a person makes. But "[s]peculation does not create a <u>genuine</u> issue of fact; instead it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (emphasis in original). Moreover, ICS provided the address to Lexis-Nexis that it received from Comcast. *See* docs. 47-2 at 2; 47-1 at 2; 33-1. To the extent that ICS erred in doing so, that fact does not establish that it has unreasonable procedures. As one court has found, a debt collector's use of the wrong first name in its "computerized search of bankruptcies" was "not fatal" to its bona fide error defense when it used the name it received from the creditor. *See Ross*, 480 F.3d at 497. To hold here that a debt collector who utilizes a third-party service like Lexis-Nexis to verify a debt cannot rely on the bona fide error

---

144 F.R.D. 87, 89 (N.D. Ind. 1992) (finding deposition notices defective under Fed. R. Civ. P. 30(b)(6) because they gave "no indication, apart from the bare recitation of Rule 30(b)(6), that the deponents were expected to testify on behalf of [plaintiff-organization].""). Accordingly, the court concludes that Selbitschka's deposition was given pursuant to Rule 30(b)(1), not Rule 30(b)(6). This distinction makes no difference here, however, because Selbitschka's declaration tracks his deposition testimony as to the bankruptcy scrub.

defense merely because it used the debtor's former address it received from the creditor would eviscerate the defense, and would impose a higher standard than the statute. After all, "§ 1692k(c) does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 539 (7th Cir. 2005); *see also Hyman*, 362 F.3d at 968 ("Although [the debt collector] could have done more to assure that bankruptcy proceedings had not been initiated, § 1692k(c) only requires collectors to adopt reasonable procedures . . .."). The situation described here is the quintessential example of an "objectively reasonable error" that was "made in good faith" and constitutes "a genuine mistake, as opposed to a contrived mistake." *Edwards*, 584 F.3d at 1352 (citation omitted).

Therefore, ICS has shown, by a preponderance of the evidence, that its violations resulted from a good-faith, reasonable error, notwithstanding its implementation of procedures "reasonably adapted" to avoid mistakenly collecting on discharged debts, including (1) employing Lexis-Nexis' automated "bankruptcy search" based on the account information it received from Comcast, and (2) promptly closing any accounts flagged as containing bankruptcy proceedings. *See*, *e.g.*, *Ross*, 480 F.3d at 497 (finding that debt collector's use of a bankruptcy search performed by another firm, followed by promptly ceasing collection of any debt for which it was notified had been discharged, was a reasonable procedure under

the third prong).[16] Consequently, the court does not have to reach the parties' respective contentions regarding the declaration of Thomas Emms, as Emms' testimony is not essential to the resolution of the bona fide error defense.

## IV.   CONCLUSION

Accordingly, ICS' motion for summary judgment, doc. 33, is due to be granted, and Lawson's motion for summary judgment, doc. 35, is due to be denied, because ICS has satisfied the bona fide error defense under 15 U.S.C. § 1692k(c). The court will issue a separate order consistent with this opinion.

**DONE** the 17th day of June, 2019.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[16] *See also Novak v. Monarch Recovery Mgm't*, 235 F. Supp. 3d 1039, 1043 (N.D. Ill. 2016) (debt collector's policy of sending accounts to Experian, which would notify debt collector of any accounts in bankruptcy, as well as its reliance on creditors to send accurate information satisfied third prong of bona fide error defense); *Cross v. Risk Mgm't Alternatives, Inc.*, 374 F. Supp. 2d 649, 651 (N.D. Ill. 2005) (finding that debt collector's use of bankruptcy search service, limited to accounts "likely to be the subject of bankruptcy petitions," and understanding that its clients would not refer discharged debts was sufficient to satisfy third prong); *cf. Bacelli*, 729 F. Supp. 2d at 1336 (rejecting bona fide error defense where debt collector merely presumed creditor would not refer discharged debts).